

FILED

2014 Oct-31  PM 02:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SHENNETTA THEDFORD;** | ) | |
| **BRIANNA KING; DECORELAN** | ) | |
| **TOMPKINS, a minor, by and through** | ) | |
| **his parent, Sherry Tompkins;** | ) | |
| **ALEXANDER DEBOSE; TALESHA** | ) | |
| **WRENCH; SHANTERRICKA** | ) | |
| **THEDFORD, a minor, by and through** | ) | |
| **her parent, Shennetta Thedford;** | ) | |
| **KRIBBE PERRYMAN,** | ) | **CASE NO.  2:14-CV-0390-SLB** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **DRIVE IN OF EVANSVILLE, INC.,** | ) | |
| **d/b/a as Sonic Drive-In,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

This case is presently pending before the court on plaintiffs' Motion for

Conditional Certification and Judicial Notice Under § 216(b). (Doc. 11.)[1] Plaintiffs

Shennetta Thedford, Brianna King, Decorelan Tompkins, Alexander Dubose, Talesha

Wrench, Shanterricka Thedford, and Kribbe Perryman have sued their former employer,

defendant Drive-In of Evansville, Inc., alleging violations of the Fair Labor Standards

Act. They have filed a Motion for Conditional Certification, in which they ask the court to

allow them to proceed with a collective action and to issue notice to similarly-situated

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each
document as it is filed in the court's record.

current and former employees of defendant. Upon consideration of the record, the

submissions of the parties, the arguments of counsel, and the relevant law, the court is of

the opinion that plaintiffs' Motion for Conditional Certification and Judicial Notice

Under § 216(b), (Doc. 11), is due to be denied.

## I. <u>STANDARD FOR CERTIFICATION OF A COLLECTIVE ACTION</u>

The FLSA authorizes a collective action under the following conditions:

> An action . . . may be maintained against any employer . . . by any one or
> more employees for and in behalf of himself or themselves and other
> employees ***similarly situated***.  No employee shall be a party plaintiff to any
> such action unless ***he gives his consent in writing*** to become such a party
> and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).[2] A district court, in its discretion, may conditionally certify a

collective action when to do so would permit the "efficient resolution in one proceeding

of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-La

Roche, Inc. v. Sperling,* 493 U.S. 165, 169-70 (1989). "A plaintiff has the burden of

showing a 'reasonable basis' for his claim that there are other similarly[-]situated

employees." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008)

(citations omitted). "The FLSA itself does not define how similar the employees must be

before the case may proceed as a collective action. And [the Eleventh Circuit has] not

---

[2]A collective action under § 216(b) differs from a Rule 23 class action in that an
individual does not become a party to the § 216(b) case unless and until he gives his consent in
writing to become a party, i.e. "opts-in" to the action, whereas a party must affirmatively "opt-
out" of a case proceeding as a Rule 23 class action. *See Haynes v. Singer Co.*, 696 F.2d 884, 885
(11th Cir. 1983); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.
2001).

adopted a precise definition of the term." *Id*. at 1259. The Eleventh Circuit, however, has

stated that "a unified policy, plan, or scheme of discrimination may not be required to

satisfy the more liberal 'similarly-situated' requirement of § 216(b). *Hipp v. Liberty Nat.*

*Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001) (quoting *Grayson v. K Mart Corp.*, 79

F.3d 1086, 1095 (11th Cir.1996)). Nevertheless, a plaintiff "must make some rudimentary

showing of commonality between the basis for his claims and that of the potential claims

of the proposed class, beyond the mere facts of job duties and pay provisions . . . ."

*Marsh v. Butler Cnty. Sch. Sys.,* 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003); *see also*

*Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, 2006 WL 6012784, at *4 (N.D. Ala

Nov. 15, 2006); *Williams v. Accredited Home Lenders, Inc.*, No. 1:05-CV-1681-TWT,

2006 WL 2085312, at *3 (N.D. Ga. July 25, 2006); *Holt v. Rite Aid Corp.*, 333 F. Supp.

2d 1265, 1270 (M.D. Ala 2004).

The Eleventh Circuit has held that "before facilitating notice, a district court

should satisfy itself that there are other employees who desire to 'opt-in' and who are

'similarly situated' with respect to their job requirements and with regard to their pay

provisions." *Morgan*, 551 F.3d at 1259 (internal quotations and citation omitted).

> The initial issue is whether Plaintiffs have made the requisite
> showing to justify conditional certification of a nationwide collective action
> and court[-]authorized notice. In *Hipp v. Liberty National Life Insurance*
> *Co.*, 252 F.3d 1208 (11th Cir. 2001), the Eleventh Circuit "suggest[ed]" a
> "two-tiered approach to certification of § 216(b) opt-in classes" to assist
> district courts in resolving the similarly situated inquiry. *Id*. at 1219. Under
> the first tier, which is labeled the "notice stage," the district court must
> decide, "usually based only on the pleadings and any affidavits which have

> been submitted[,] ... whether notice of the action should be given to potential class members." *Id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). Before notice is given, a "district court should satisfy itself that there are other employees of the [defendant-] employer who desire to 'opt-in' and are 'similarly situated'. . . ." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

*Devries v. Morgan Stanley & Co.*, No. 12-81223-CIV, 2014 WL 505157, *2 (S.D. Fla. Feb. 7, 2014).

In this case, the parties were allowed ample time to conduct discovery on the issues for conditional certification and notice.[3] In *Robinson v. Ryla Teleservices, Inc.*, No. CA 11-131-KD-C, 2011 WL 6667338, at * 1-2 (S.D. Ala. Dec. 21, 2011), the court allowed the defendant but not the plaintiffs time to conduct limited discovery before the plaintiffs filed a motion for conditional certification, and therefore, the court applied a lenient standard to assess the certification motion. Unlike in *Robinson*, where the plaintiffs had not been allowed time to conduct discovery, in this case, plaintiffs had the opportunity to conduct discovery, despite their choice not to avail themselves of it. (Doc. 17 at 37.) "The rationale [for the lenient standard] disappears . . . once plaintiffs have had an *opportunity* to conduct discovery with respect to defendant's policies and procedures." *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (citing *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 n.2 (M.D. Ala. 2002); *Brooks*

---

[3]The court entered a bifurcated scheduling order allowing the parties two and a half months to engage in discovery pertaining to conditional certification of a collective action before the deadline for plaintiffs to file a Motion for Conditional Certification.  (Doc. 10.)

*v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995)) (emphasis added). Therefore, "[t]his case is in a slightly different posture than that envisioned in *Hipp* as the first stage, or 'notice stage,' and thus a more searching standard of review is appropriate." *Davis*, 303 F. Supp. 2d at 1276 (internal citation omitted).

This court takes seriously its "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Brooks*, 164 F.R.D. at 567. Plaintiffs "will not be permitted to rely on the allegations in [their] Complaint. Rather, [they] must rely on the evidence, and all the evidence will be considered, not just [plaintiffs' evidence]." *Pickering v. Lorillard Tobacco Co.*, 10-CV-633-WKW, 2012 WL 314691, at *9 (M.D. Ala. Jan. 30, 2012).

## II.  STATEMENT OF FACTS

Defendant, Drive-In of Evansville, Inc., owns and operates twenty-six Sonic Drive-In restaurants in four states: Alabama, Indiana, Kentucky, and Ohio. (Doc. 17 ¶ 6.) Plaintiffs' proposed class consists of over 3,000 hourly employees who worked for defendant during the past three years. (Doc. 17 ¶ 10; Doc. 1 ¶ 5.)

The seven plaintiffs in this case all worked for defendant at the Adamsville, Alabama Sonic restaurant. (Doc. 17 at 39; Doc. 18-1 ¶ 2.) Six former employees, who also worked at the Adamsville restaurant, filed opt-in consent forms. (*Id.*; Doc. 13-3 at 1-4, 9-10.) Only one of the thirteen plaintiffs and opt-in plaintiffs worked at another location—Jasmane Hayes worked at the Bessemer, Alabama Sonic restaurant until

October 2012. (Doc.17 at 39; Doc. 18-1 ¶¶ 2, 11.) Mike Godwin is the district manager responsible for the Adamsville, Cullman, Fayette, Hamilton, Jasper, and Sumiton restaurants. (Doc. 17 ¶ 9; Doc. 20 ¶ 2.)

In their Motion, plaintiffs contend that defendant has four illegal policies that violate the FLSA: (1)  defendant requires employees to work "off the clock" while refusing to pay them for that time; (2) defendant refuses to pay overtime compensation; (3) defendant shaves time off employee time records; and (4) defendant "falsif[ies] tip records to avoid paying the carhop employees minimum wage." (Doc. 11 at 2.) Plaintiffs allege that these policies all stem from two overarching company-wide policies: "the policy requiring that labor costs at each location not exceed a certain percentage of daily sales and the policy forbidding the compensation of 'off the clock' work." (Doc. 12 at 24.) Plaintiffs request that, should the court deny certification as to defendant's twenty-six locations, the court certify a class of employees at the restaurants which Mike Godwin oversees, or at the very least, a class of employees at the Adamsville and Bessemer locations. (Doc. 12 at 44 n. 4.)

**A. Requiring Employees to Work "Off the Clock" Without Pay**

Plaintiffs contend:

Though hourly employees are required to be at work for their scheduled shifts, the defendant instructs the hourly employees that they are not allowed to clock into the time-keeping system (the time clock) until they are instructed to do so by a manager. [(Doc. 1 ¶ 16.)] The [d]efendant requires the managers to prohibit the hourly employees from clocking in when they begin work in order to keep labor costs down; instead, the hourly employees must work off the clock. [(Doc. 1 ¶¶ 16,

6

24, 33.)] Additionally, hourly employees are required to work off the clock at the end of their scheduled shifts. [(Doc. 1 ¶¶ 22, 33, 36.)]

. . . The [d]efendant's policy for all its locations is that hourly employees are not compensated for time worked "off the clock," [(Doc. 1 ¶13), and] [t]he [d]efendant's policy for all its locations is that labor costs must not exceed 22 percent on a daily or weekly basis. [(Doc. 13-4 ¶ 6; Doc. 13-6 ¶ 14.)] The general and assistant managers are required to keep constant track of the labor percentage throughout each day to make sure it does not reach 22 percent . . . [(Doc. 13-6 ¶ 14), and] district manager instructs the general managers and assistant managers that in order to keep labor costs at or below 22 percent, the hourly employees, which includes the assistant managers, are prohibited from working on the clock when the labor percentage gets close to or reaches 22 percent of the daily sales. [(Doc. 13-4 ¶¶ 25-26; Doc. 13-6 ¶ 9; Doc. 13-5 ¶ 16; Doc. 13-7 ¶ 6.)]

. . . If the assistant managers and/or general managers allow the hourly employees to work on the clock for the entire time that they work regardless of how high the labor percentage gets, then they [the assistant and general managers] will be terminated by the district manager. [(Doc. 13-4 ¶ 9; Doc. 13-6 ¶ 8.)]

(Doc. 12 at 4-7.)

Shennetta Thedford began working for defendant in September 2010. (Doc. 13-4 ¶ 2.) Thedford testified that "[t]throughout the time that [defendant] has owned Sonic, I was required to work off the clock for multiple hours on a daily basis. I was not compensated for the hours I worked off the clock." (Doc. 13-4 ¶ 3.) She states that defendant assigned her eight-hour shifts, but she "worked well over [eight] hours per day." (*Id.* ¶ 11.) Thedford also testified that defendant forbade her "from clocking in until the store made a certain amount of money for the day (approximately $40 in sales)." (*Id.* ¶ 19.) As a crew member and later as an assistant manager, Thedford alleges she was required to arrive and begin working at 5:30 a.m. but could not "clock in until enough

business came through the door." (*Id.* ¶ 25.)  Thedford further testified that general manager David McGee and his predecessor, Kathy, required her and other employees to work off the clock until labor costs dropped below 22% of sales. (*Id.* ¶ 26.) In addition to testifying that she was required to work for over an hour off the clock at the end of her shift "on a daily basis," Thedford testified that "some days [she] was not able to clock in at all [and] . . . was not compensated at all for the days [she] worked but was not able to clock in." (*Id.* ¶¶ 27, 29.) Thedford also testified that "Scott (last name unknown), . . . a co-owner of Drive-In of Evansville, Inc., reviews the weekly reports from each location and makes comments on the reports regarding labor. Labor that exceeds 22 percent is considered too high and the general managers and assistant managers for those locations with labor exceeding 22 percent are disciplined and will be terminated if labor is higher than 22 percent." (*Id.* ¶ 21.)

Thedford points to Mike Godwin as the main decisional source requiring employees to work off the clock, stating that during her time as general manager, Godwin threatened to terminate her if she did not reduce labor costs below 22% of sales for the week. (*Id.* ¶ 33.) Additionally, she states that Godwin required her to fire Alexander Dubose because Dubose allowed employees to work on the clock "for too long and his labor percentage was too high." (*Id.* ¶ 34.) Thedford contends that Godwin terminated her on November 11, 2013 because he "didn't 'see any progress' with [her], which meant [she] wasn't keeping labor low enough." (*Id.*) Defendant contends, to the contrary, that

defendant did not terminate Thedford, but rather, she "voluntarily resigned her employment . . . after declining a demotion to an Assistant Manager position." (Doc. 18-1 ¶ 3.)

The remaining plaintiffs and the six opt-in plaintiffs make substantially similar allegations that defendant required them to work "multiple hours" off the clock before their shifts began, throughout the day, and after their shifts ended. (Doc. 13-5 ¶¶ 11, 13, 24; Doc. 13-6 ¶¶ 4, 6, 7, 9, 10; Doc. 13-7 ¶ 5; Doc. 13-8 ¶¶ 5, 6; Doc. 13-9 ¶¶ 5, 6; Doc. 13-10 ¶ 5; Doc. 13-11 ¶ 4; Doc. 13-12 ¶¶ 4, 5; Doc. 13-13 ¶ 7; Doc. 13-14 ¶¶ 8, 11; Doc. 13-15 ¶ 5; Doc. 13-16 ¶¶ 4, 7.) A couple of plaintiffs echo Thedford in stating that they were not permitted to clock in when they arrived at work until the store made a certain amount of money. (Doc. 13-6 ¶¶ 4, 13; Doc. 13-12 ¶ 4.) Like Thedford, plaintiffs allege that they received no compensation for any work performed off the clock. (Doc. 13-5 ¶ 23; Doc. 13-6 ¶ 12; Doc. 13-7 ¶ 5; Doc. 13-8 ¶ 7; Doc. 13-9 ¶ 10; Doc. 13-10 ¶ 6; Doc. 13-11 ¶ 4; Doc. 13-12 ¶ 6; Doc. 13-14 ¶ 9; Doc. 13-15 ¶ 5; Doc. 13-16 ¶ 8.) Hayes testified that she "was informed by one of the owners of Drive-In of Evansville, Inc., Scott (last name unknown)[,] that the corporate policy for all the Sonic Drive-In locations is that employees are not compensated for work performed off the clock." (Doc. 13-5 ¶ 10.) Hayes does not provide any context for this statement, and plaintiffs provide no dates or specific examples of FLSA violations to support their generalized allegations.

While neither party offered any written policies into evidence, the current Vice President of Operations and four district managers state that defendant requires employees to report all hours worked by clocking in and out when they begin work, take a break or meal period of 30 minutes or more, and finish work. (Doc. 17 ¶ 18; Doc. 18-30 ¶ 9; Doc. 18-3 ¶ 6; Doc. 18-17 ¶ 6; Doc. 18-20 ¶ 6; Doc. 18-27 ¶ 6.) Defendant's timekeeping system, which employees use to clock in and out, generates daily receipts stating the employees' clock in and out times and the number of hours worked. (Doc. 17 ¶ 19; Doc. 18-30 ¶ 10; Doc. 18-3 ¶ 8; Doc. 18-17 ¶ 8; Doc. 18-20 ¶ 8; Doc. 18-27 ¶ 8.) Defendant does not retain these receipts or otherwise use them; their only purpose is for employees to track their daily work hours and compare them with the employees' hours as they are recorded on the employees' paychecks. (*Id.*)

Defendant also states that it has a policy requiring employees to be properly paid for all time worked, and managers are responsible for complying with this policy. (Doc. 17 ¶ 17; Doc. 18-30 ¶ 8; Doc. 18-3 ¶ 5; Doc. 18-17 ¶ 5; Doc. 18-20 ¶ 5; Doc. 18-27 ¶ 5.) In evaluating general managers' job performance, defendant considers several factors, including labor, sales, cost of food, speed of service, customer complaints, and cleanliness. (Doc. 17 ¶ 22; Doc. 18-30 ¶ 13; Doc. 18-3 ¶11; Doc. 18-17 ¶ 11; Doc. 18-20 ¶ 11; Doc. 18-27 ¶ 11.) Defendant contends that a general manager's ability to keep labor costs below 22% is "merely one factor among many." (*Id.*)  Defendant offered testimony that the combined Drive-In of Evansville restaurants incurred weekly labor costs

exceeding 22% in 47% of the work weeks between August 9, 2011 and December 31, 2013. (Doc. 17 ¶ 38; Doc. 18-30 ¶ 13.)

**B. Overtime Compensation**

Plaintiffs contend, "In order to keep labor costs down to the required percentage, the [d]efendant does not pay its hourly employees overtime compensation for hours worked in excess of 40 hours per week." (Doc. 12 ¶ 31; Doc. 1 ¶¶ 19, 38.) Shennetta Thedford, Shanterricka Thedford, Jaquinten Thedford, Dubose, Wrench, King, Hayes, Dickerson, and Rogers all testified that they worked over forty hours without receiving overtime compensation. (Doc. 13-4 ¶ 4; Doc. 13-12 ¶ 14; Doc. 13-16 ¶ 9; Doc. 13-6 ¶ 12; Doc. 13-13 ¶ 11; Doc. 13-15 ¶ 7; Doc. 13-5 ¶¶ 9, 12; Doc. 13-8 ¶ 4; Doc. 13-11 ¶ 6.) Some of plaintiffs' Declarations state that they worked overtime "on a weekly basis," (Doc. 13-4 ¶ 4; Doc. 13-11 ¶ 6), or "per week," (Doc. 13-5 ¶¶ 9, 12; Doc. 13-12 ¶ 14; Doc. 13-13 ¶ 11), but plaintiffs provide no relevant dates or examples of instances where they worked overtime without receiving compensation.

Declarants for the defendant state that between August 9, 2011 and December 31, 2013, defendant paid hourly, non-exempt employees more than $500,000 in overtime compensation, (Doc. 17 ¶ 55; Doc. 18-30 ¶ 5), and during that time, the Bessemer location, alone, paid employees more than $25,000 in overtime compensation, (Doc. 17 ¶ 56; Doc. 18-30 ¶ 5). Defendant further contends that Alexander Dubose received overtime compensation in over twenty-eight weeks in 2013, including four weeks where

11

defendant paid him for more than fifty hours per week. (Doc. 17 ¶ 57; Doc. 18-1 ¶ 18.)

**C. Shaving Time Off Employee Time Records**

Other than their allegation in the Motion, plaintiffs do not make any assertions in their brief to support a claim that defendant permitted managers to shave time off employee time records. Two opt-in plaintiffs, Hayes and Dickerson, testified that general managers reduced their hours in the time-keeping system to decrease labor costs for the store. (Doc. 13-5 ¶ 17; Doc. 13-8 ¶ 8.) Specifically, Hayes testified that the general manager, Rhonda Swain, altered employees' hours every morning if labor percentages for the previous day were above 21%. (Doc. 13-5 ¶ 17.) Hayes contends that Swain terminated her after she complained to Swain about time shaving, (Doc. 13-5 ¶ 17), and Dickerson states that he complained to Dave, his general manager, about time shaving, and Dave agreed that Dickerson's scheduled shift and pay stub reflected a different number of hours worked, but did not correct the discrepancy, (Doc. 13-8 ¶ 9).

Defendant presented testimony that it trains managers that shaving time off employee time records and failing to pay employees for all hours worked are strictly prohibited. (Doc. 17 ¶ 17; Doc. 18-30 ¶ 8; Doc. 18-3 ¶ 5; Doc. 18-17 ¶ 5; Doc. 18-20 ¶ 5; Doc. 18-27 ¶ 5.) In fact, defendant offered evidence that it terminated two general managers in Indiana for intentionally shaving time off employee time records. (Doc. 17 ¶ 17; Doc. 18-30 ¶ 8.)

**D. Falsifying Tip Records to Avoid Paying Minimum Wage**

"Carhops" are employees "whose primary responsibility is to take customer orders and deliver the orders to the customer's vehicle." (Doc. 17 ¶ 20; Doc. 18-30 ¶ 11; Doc. 18-3 ¶ 9; Doc. 18-17 ¶ 9; Doc. 18-20 ¶ 9; Doc. 18-27 ¶ 9.)  They earn an hourly rate less than minimum wage and keep any tips they receive from customers. (*Id.*)  Defendant's policy is to supplement a carhop's hourly income if the carhop does not earn enough in tips, when combined with his income, to equal minimum wage. (*Id.*)

Shennetta Thedford, Shanterricka Thedford, Tompkins, King, Hayes, Melvin, and Rogers testified that, while working as carhops, they all received somewhere between $5-10 on average in daily tips, yet their paychecks reflected that they earned higher tips. (Doc. 13-4 ¶¶ 15-16; Doc. 13-12 ¶¶ 10-11; Doc. 13-14 ¶¶ 12, 15; Doc. 13-15 ¶¶ 9, 11; Doc. 13-5 ¶¶ 5-6; Doc. Doc. 13-7 ¶¶ 7, 9; Doc. 13-11 ¶¶ 7, 9.) Wrench testified that defendant recorded tips on her paycheck that she had not received in order for defendant to avoid paying minimum wage. (Doc. 13-13 ¶ 10.) Most of these plaintiffs and opt-in plaintiffs testified that they did not receive enough tips, when combined with their hourly income, to equal minimum wage and that defendant falsely reported higher tips on plaintiffs' paychecks to avoid paying them minimum wage, thereby, cutting labor costs. (Doc. 13-4 ¶¶ 16, 18; Doc. 13-12 ¶¶ 11-12; Doc. 13-14 ¶ 15; Doc. 13-15 ¶¶ 10-11; Doc. 13-5 ¶¶ 6-7; Doc. Doc. 13-7 ¶¶ 8-9; Doc. 13-11 ¶¶ 8-9.)

Defendant presented pay records for Shanterricka Thedford, Tompkins, and King showing they received supplemental tip income during multiple weeks. (Doc. 18-1 at 21-

13

42.) Defendant also presented testimony that payroll records show that (1) Shanterricka Thedford received $10 or less in tips for 99.2% of workdays in 2013, (2) Tompkins received $10 or less in tips for 94% of workdays in 2013, and (3) King received $10 or less in tips for 98% of workdays in 2013. (Doc. 17 ¶ 61; Doc. 18-1 ¶ 16.) Additionally, defendant offered testimony that it recorded $10 or less in tips on Roger's payroll records on 93% of workdays in 2013. (*Id.*)

## III.  DISCUSSION

In their Motion, plaintiffs allege defendant "has a pattern and practice" of (1) requiring employees to work "off the clock" without compensation; (2) refusing to pay overtime compensation; (3) shaving time off employee time records; and (4) "falsifying tips records to avoid paying the carhop employees minimum wage." (Doc. 11 at 2.) "Before determining to exercise [its power to conditionally certify this collective action and to facilitate notice to the class] on application by [plaintiffs] . . . , the district court should satisfy itself that there are other employees of [defendant] who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."  *Dybach v. State of Fla. Dept. of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

## A.  OTHER EMPLOYEES DESIRE TO OPT IN

Six current and former employees of defendant have filed opt-in notices. (Doc. 13-3 at 1-4, 9-10.) All of these opt-in plaintiffs have filed Declarations. (Docs. 13-5; 13-7;

14

13-8; 13-10; 13-11; 13-16.) "Where consents to participate in the suit have already been filed[,] district courts in the Eleventh Circuit have found that, for purposes of deciding a motion for conditional collective action certification, the already-filed consents to opt-in established that there were persons who would join in the suit if they had notice of the suit." *Billingsley v. Citi Trends, Inc.*, No. 4:12-CV-0627-KOB, 2013 WL 246115, at *2 (N.D. Ala. Jan. 23, 2013) (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1101 (M.D. Ala. 2003)) (internal quotations and alterations omitted).

For purposes of deciding plaintiffs' Motion, the court finds that there are other employees who desire to opt-in. However, because all the consents to opt-in were filed by employees from the Adamsville restaurant and one consent was filed by an employee who also worked at the Bessemer restaurant, the court makes no assumption that employees outside those two restaurants desire to participate in this case.

## B. SIMILARLY-SITUATED EMPLOYEES

Before the court certifies a collective action and facilitates notice, it must be satisfied that other employees are "'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1568.

> In the absence of a concrete definition of "similarly situated," *see Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259-60 (11th Cir. 2008) ("[W]e have not adopted a precise definition of ['similarly situated']. . . . [W]e [have] explained what the term does not mean – not what it does."), courts have looked to a variety of factors, including [1] job title; [2] geographic location; [3] the temporal proximity of the FLSA violations alleged; [4] the nature and decisional source of any contested policies and practices; and [5] the similarity of treatment given to the various plaintiffs

> and potential opt-in plaintiffs by the defendant.  *See Smith* [*v. Tradesmen Intern., Inc.*], 289 F. Supp. 2d [1369,] 1372 [(S.D. Fla. 2003)].  However, such general factors provide little concrete guidance; the court's decision must be the result of a fact-intensive inquiry. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (referring to the Eleventh Circuit's approach to similarly situated determinations as "ad hoc").

*Hogan v. Allstate Beverage Co., Inc.*, Civil Action No. 2:10cv390-MHT, 2012 WL 6027748, at *4 (M.D. Ala. Dec. 4, 2012). Nevertheless, the point of this exercise is to determine whether plaintiffs have "demonstrate[d] a reasonable basis for their claim of class[-]wide discrimination." *Maudlin v. Johnny Kynard Logging, Inc.*, Civil Action No. 08-0307-KD-C, 2009 WL 455479, at *2 (S.D. Ala. Feb. 20, 2009) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001)) (internal quotations omitted).  However –

> the mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.  To conclude otherwise, that is, to conclude that it is enough to demonstrate that employees are similarly situated simply to say that they claim violations of the law by the same employer, is to conclude that any time an employer had two or more employees who allegedly were not being paid the overtime they claimed they were due, the employees would be similarly situated and be allowed to proceed with a collective action.  While plaintiffs certainly are not required to prove by a preponderance of the evidence a pattern and practice at the notice stage, ***because there is no requirement of a motivating discriminatory animus in an FLSA case a pattern in such a case must stem from some other formal or informal policy***.

*Marsh v. Butler Cnty. Sch. Sys.*, 242 F. Supp. 2d 1086, 1094 (M.D. Ala. 2003) (footnote omitted) (emphasis added). "The burden is on the plaintiffs to make an evidentiary

showing that they and the proposed class are similarly situated, not on the defendants to disprove such similarity." *Saxon v. Title Max of Ala., Inc.*, 431 F. Supp. 2d 1185, 1188 (N.D. Ala. 2006) (quoting *Reed v. Mobile Cnty. Sch. Sys.*, 246 F. Supp. 2d 1227, 1232 (S.D. Ala. 2003)).

### 1. Job Title

Plaintiffs seek to join the claims of all current and former hourly employees working for defendant between 2011 and the present.  Hourly job positions include crew members, cooks, carhops, and assistant managers. Some job positions are associated with certain alleged FLSA violations, while others are not. For example, only carhops allege that defendant falsified tip records to reflect that the carhops received more tips than they actually did. However, because the court may create subclasses of plaintiffs, if necessary, once the parties have conducted discovery, differing job titles do not preclude certification. *See Pena v. Handy Wash, Inc.*, Case No. 14-20352-CIV, 2014 WL 2884559, at *12 (June 18, 2014).

Therefore, this factor does not heavily weigh against certifying a class.

### 2. Geographic Location

Plaintiffs and the six opt-in plaintiffs who have filed Declarations all worked only in the Adamsville restaurant, except Hayes, who also worked in the Bessemer restaurant until October 2012. Plaintiffs propose a collective action covering all Drive-In of Evansville hourly employees currently or formerly working in its twenty-six restaurants in

Alabama and three other states. The court finds that the vast majority of potential

collective action members do not share a geographic location with plaintiffs.

Therefore, the court finds this factor weighs against certifying the proposed multi-

state collective action.

### 3.  Temporal Proximity

The members of the proposed collective action worked during the same time

period as plaintiffs. Plaintiffs began work at various times between September 2010 and

June 2013, and all of them either quit or were terminated between July and November of

2013. Plaintiffs seek to certify a class of hourly employees working for defendant within

the last three years.

Therefore, the court finds that this factor weighs in favor of certifying the class.

### 4.  The Nature and Decisional Source of Contested Policies and Practices

Plaintiffs allege that defendant has "corporate polic[ies] dictat[ing] that labor costs

cannot exceed 22 percent at each of its locations . . . [and forbidding] the compensation of

off-the-clock work performed by employees at any of its locations" and that these

overarching policies result in the four policies plaintiffs challenge. (Doc. 12 at 35.)

Thedford states in her Declaration that the policies at issue are "utilized at all the

locations owned by Drive-In of Evansville, [so] there are numerous individuals who have

been forced to work off the clock for which they were not compensated, who have not

received overtime compensation for their work in excess of 40 hours per week, and those

18

who have been paid under minimum wage." (Doc. 13-4 ¶ 42.) However, plaintiffs have

not presented any evidence, other than conclusory allegations, that defendant maintains a

company-wide policy of keeping labor costs below 22% of sales, or of the other policies

at issue. In fact, defendant presented evidence that substantially discredits plaintiffs'

claim that defendant has such a policy. In addition to testifying that labor costs is only one

among many factors for evaluating general managers' job performance, defendant alleges

that, between August 9, 2011 and December 31, 2013, weekly labor costs for Drive-In of

Evansville restaurants exceeded 22% of revenue in 47% of the work weeks.

Defendant also contends that it has strict policies prohibiting shaving time from

employee records or failing to pay employees for all hours worked. The fact that

defendant states that it terminated two general managers in Indiana for shaving time from

employee time records does not support plaintiffs' claim that defendant "sits back idly,

reaping the benefits of free labor." (*Id.*; Doc. 12 at 37.) *Cf. Reich v. Dep't of Conservation

and Natural Res.*, 28 F.3d 1076, 1083 (11th Cir. 1994) (noting that record contained no

evidence that defendant/employer had taken any action to "discourage the overtime

required by the vast majority of its officers," based, in part, on the fact that "no officer

was ever disciplined for violating the forty-hour rule").

Plaintiffs allege that Mike Godwin, the district manager responsible for the

Adamsville restaurant and five other restaurants in Alabama, is the decisional source for

the alleged illegal policies. In her Declaration, Thedford testified that Godwin required

general and assistant managers, including her, to keep labor costs below 22% of revenue and that he threatened to terminate Thedford if she did not decrease labor costs to 22% of revenue or less for the week. In their Declarations, plaintiffs allege that various general managers at the Adamsville location, including David McGee and Rhonda Swain, enforced the policies because defendant threatened to terminate general managers if labor costs exceeded 22% of revenue. Plaintiffs make no allegations about the relevant decisional sources at the Bessemer location.

Even assuming defendant maintains a policy requiring labor costs not to exceed 22% of revenue, such a policy does not violate the FLSA.  The fact that a particular district or general manager may have been motivated to violate the FLSA to comply with the policy of keeping labor costs below 22% of revenue does not necessarily create a policy or practice of that manager's employer.  *See Babineau v. Federal Exp. Corp.*, 576 F.3d 1183, 1193-94 (11th Cir. 2009) ("[P]roving that [defendant] had a policy of holding its employees to efficiency standards that were difficult to meet would not prove that [it] required any individual class member to work without pay.").

The court finds that the nature of the policy violations is isolated at best. Plaintiffs have not shown class-wide FLSA violations, as "there is a total dearth of factual support for [p]laintiffs' allegations of widespread wrongdoing at [d]efendant's . . . restaurants" other than Adamsville. *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D. Ala. 1999). A conclusory statement, without supporting evidence, does not provide support for

certification. *See Bacon v. Eaton Aeroquip, L.L.C.*, 2012 WL 431712, at *2 (E.D. Mich. Sept. 20, 2012) (finding that the plaintiffs conclusory statement that "[i]t is my personal knowledge that [Defendant's] . . . policy of misclassification was intentionally and uniformly enforced against all low-level supervisors at my location, *which I [] understood was the same company-wide*. . ." provided no support for certification because the plaintiffs provided no "relevant facts or assertions to support such an understanding, nor do they indicate how or why they came to have such an understanding").

The court also finds that plaintiffs' allegations regarding Godwin do not establish a similarity with employees at the other five restaurants he manages. Plaintiffs present no evidence that Godwin imposed the alleged policies at any other restaurants. In fact, defendant presented 35 affidavits from employees working at all six restaurants that Godwin manages either stating that they have never been required to work off the clock or that they have no knowledge of a district manager or company employee requiring anyone to work off the clock. Plaintiffs presented no evidence of a company-wide or district-wide decision maker that has systematically enforced the alleged illegal policies.

Therefore, the court finds that this factor weighs against certifying the proposed collective action.

### 5.  Similarity of Actions that Constitute Violations

Plaintiffs have alleged four types of FLSA violations:  (1) requiring employees to work "off the clock" without compensation; (2) refusing to pay overtime compensation;

21

(3) shaving time off employee time records; and (4) "falsifying tips records to avoid paying the carhop employees minimum wage." (Doc. 11 at 2.) Plaintiffs contend that these illegal policies result from defendant's corporate policies prohibiting labor costs at all Drive-In of Evansville locations from exceeding 22% of revenue and prohibiting the compensation of work performed off the clock.

"[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences." *Marsh*, 242 F. Supp. 2d at 1094. Plaintiff must demonstrate a "pattern" of FLSA violations that "stem from [defendant's] formal or informal policy." *Id.*; *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) ("There is nothing unfair about litigating a single corporate decision in a single collective action, especially where there is robust evidence that store managers perform uniform, cookie-cutter tasks mandated by a one-size-fits-all corporate manual.").

Plaintiffs allege that defendant required all employees to work off the clock without pay for multiple hours every day to cut labor costs. All thirteen plaintiffs and opt-in plaintiffs make similar declarations that they worked numerous hours off the clock to avoid termination. Shennetta Thedford testified that "[s]ome days I wasn't able to clock in at all. I was not compensated at all for the days that I worked but was not able to clock in despite the fact that I was scheduled to work these days and did in fact work them."

22

(Doc. 13-4 ¶ 29.) Plaintiffs do not include among their broad allegations any specific incidents of defendant requiring them to work off the clock. Despite plaintiffs claiming that "violations alleged by the plaintiffs are wide-spread, systematic violations that affect all the defendant's hourly employees," (Doc. 12 at 39), plaintiffs have not presented specific evidence of violations in the Adamsville or Bessemer restaurants, much less in any other restaurant. Defendant produced Declarations from thirty-seven employees stating that defendant paid them for all the time they worked, which further detracts from plaintiffs' claim that they are similarly situated to the proposed class.

The court finds that plaintiffs are not similarly situated to the proposed class with regard to the alleged violation of requiring employees to work off the clock.

Plaintiffs next allege that defendant refuses to pay employees working more than forty hours per week overtime compensation. Five plaintiffs and four opt-in plaintiffs, including Hayes, state that they worked more than forty hours per week, but defendant did not pay them overtime compensation. Hayes testified that she worked more than forty hours per week without receiving overtime compensation at both the Bessemer and Adamsville locations. Defendant contends that, between August 9, 2011 and December 31, 2013, all restaurants combined paid employees more than $500,000 in overtime compensation and that the Bessemer restaurant, alone, paid hourly employees more than $25,000 in overtime compensation. Defendant also contends that Alexander Dubose, who testified that defendant did not pay him overtime compensation for "overtime hours

23

performed off the clock," (Doc. 13-6 ¶ 12), received overtime compensation in over twenty-eight weeks during 2013, including four weeks in which defendant paid him overtime compensation for more than fifty hours.

The court finds that plaintiffs' conclusory allegations fail to show any similarity between plaintiffs and the proposed class. Additionally, defendant's allegations regarding the Bessemer location's pay practices and Dubose's overtime compensation strongly suggest that individualized inquiries into each plaintiff's claim would be necessary.

Plaintiffs' third contention is that defendant permits managers to shave time off employee time records to reduce labor costs. Two opt-in plaintiffs stated in their Declarations that general managers shaved time off their time records, but when the employees complained to the managers about the reduction in their hours, the managers took no action. Plaintiffs do not refer to a specific instance of time shaving, and they do not state by how much the managers illegally reduced their hours. These allegations provide no evidence of a wide-spread practice of time shaving, nor do they support a claim that the two opt-in plaintiffs are similarly situated to other Adamsville and Bessemer employees.

Lastly, plaintiffs allege that defendant falsified tip records by inflating the amount of tips plaintiffs received on their paychecks, so defendant would not have to pay the employees minimum wage. Eight of the plaintiffs and opt-in plaintiffs state that, while working as carhops, they made somewhere between $5-10 in tips on average per day. If

24

employees tips are not enough when combined with carhops' hourly pay rate to equal minimum wage, defendant's policy is to pay those employees supplemental tip income so the employees receive at least minimum wage for every hour worked. Plaintiffs contend that their paychecks reflected that they received sometimes double or triple the amount they actually received in tips, so defendant would not have to pay those employees supplemental tip income. Plaintiffs do not state any specific dates or documented evidence showing where their actual tips and the tips reflected on their paychecks failed to match.

Defendant submitted pay records for three employees—Shanterricka Thedford, Tompkins, and King—showing that the employees received supplemental tip income on multiple occasions. Additionally, defendant states that its payroll records reflect that $10 or less in tips was received: (1) by Shanterricka Thedford for 99.2% of workdays in 2013, (2) by Tompkins for 94% of workdays in 2013, (3) by King for 98% of workdays in 2013, and (4) by Rogers for 93% of workdays in 2013. Because all four employees stated that they received an average of $5-10 in tips per day and that their paychecks showed double and sometimes triple the amount of actual tips received, the discrepancy in the evidence shows that fact-intensive, individualized inquiries would be necessary to evaluate defendant's alleged practice of falsifying tip records.

The court finds that plaintiffs have not provided sufficient evidence of similarity to the proposed class regarding the claim of falsifying tip records.

Plaintiffs have not shown that common issues of law or fact connect them to the proposed class because they have not provided any evidence of the alleged FLSA violations outside of the Adamsville and Bessemer restaurants. Additionally, after considering plaintiffs' allegations and Declarations, the court finds that plaintiffs have not established that they are similarly situated to employees from the Bessemer or Adamsville restaurants. Only one opt-in plaintiff worked at the Bessemer restaurant, and her Declaration provides only conclusory allegations without supporting evidence of FLSA violations or of facts stating the decisional sources of the alleged FLSA violations. As to the Adamsville location, plaintiffs have not established similarity with other employees. Unlike in *Harper*, where the plaintiffs "made substantial, detailed allegations of FLSA violations and provided evidentiary support that they" were similarly situated to other employees at the defendant's Dothan restaurant, 185, F.R.D. at 365, plaintiffs have not provided sufficient, detailed evidence to allow the court to conclude that, under the "more searching standard of review" applied in this case, plaintiffs and the opt-in plaintiffs are similarly situated to one another or to other Adamsville employees.

Therefore, the court finds that there are no "common issues of law or fact arising from the same alleged [unlawful] activity" such as can be resolved efficiently in one proceeding. *Hoffman-LaRoche*, 493 U.S. at 170. Without common issues of law or fact tying plaintiffs to the proposed class, class certification would not only fail to serve judicial efficiency but would constitute "the 'stirring up' of litigation through

unwarranted solicitation" that this court cannot permit. *Brooks*, 164 F.R.D. at 567. Certification of this collective action is improper as to the proposed class. Plaintiffs' Motion for Conditional Certification and Judicial Notice Under § 216(b), (Doc. 11), is due to be denied.  The opt-in claimants will be dismissed without prejudice.[4]

## CONCLUSION

For the reasons set forth above, plaintiffs' Motion for Conditional Certification and Judicial Notice Under § 216(b), (Doc. 11), is due to be denied.  An Order denying the Motion for Conditional Certification will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 31st day of October, 2014.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE

---

[4] "[T]he statute of limitations has been tolled for these potential opt in plaintiffs as of the dates they filed their consents to opt in." *Chapman v. Fred's Stores*, No. 2:08-cv-01247-HGD, 2013 WL 1767791, *12 n.1 (N.D. Ala. Mar. 15, 2013) (citing *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1380 (11th Cir. 1998)).